UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 05-30043-MAP |
| | ) | |
| LUIS BIAGGI, | ) | |
| Defendant | ) | |

## MOTION TO DISCOVER IDENTIFICATION PROCEDURES AND REPORTS AND SURVEILLANCE LOCATIONS OF OFFICERS

NOW COMES the defendant, Luis Biaggi, and respectfully moves this Honorable

Court to order the Government to produce the following information and reports:

1. The names of the agents or officers who claim to have witnessed the 'controlled buy' of narcotics by Julian Rios from Luis Biaggi on February 8, 2005.

2. The surveillance location of each agent or officer identified at the time that they witnessed the 'controlled buy'.

3. All identification procedures utilized for identification of Luis Biaggi as the person who engaged in a narcotics transaction on that date, the names of the persons who made such identification, and if Mr. Biaggi was identified through a photo spread or similar identification proceeding, color copies of any photographs shown to any witness in order for the witness to make the identifications. (Previously requested, see letter of Dec. 14, 2005).

4. Any report of any federal agent or police officer regarding any identification procedure. (Previously requested, see letter of Dec. 14, 2005).

5. The names of the FBI agents who displayed a photographic lineup to Julian Rios on June 2, 2005, as detailed in a letter from the Government dated March 13, 2006. (***Exhibit 1***).

6. The name of any agent or officer who was present and witnessed the controlled buy made by Julian Rios from a person who was later mistakenly identified as Andres Cotto.

7. The name of any agent or officer who was present and witnessed the controlled buy made by Julian Rios from a person who was later mistakenly identified as Andres Cotto.

8. Any report of any agent or police officer relating to the discovery of the misidentifications, how the misidentifications were determined, and how the misidentifications were communicated to the United States Attorney's Office.

9. Any written statements of Julian Rios regarding the misidentification of Rodriguez or Cotto.

10. Any oral statements of Julian Rios regarding the misidentification of Rodriguez or Cotto.

The defendant cites the following reasons and grounds in support of this motion:

The charges against Luis Biaggi arise from an alleged sale of narcotics by the defendant to a government informant, Julian Rios on February 7, 2005. While Mr. Rios was 'wired' with a video camera and tape recorder, the recorded video does not show Luis Biaggi, and the recorded audio is not clearly audible. Thus, the government will be relying upon identifications of the defendant made by Mr. Rios and agents who allegedly observed the transaction.

The government has informed defendant's counsel that one or more of the agents who may testify as to defendant's participation in the February 7, 2005 narcotics transaction did not know Mr. Biaggi and had not seen him prior to that date, but identified him from a single photograph shown some time after the transaction.

On March 13, 2006, the government disclosed via letter that in June, 2005, Mr. Rios had misidentified two persons, Andres Cotto and Tito Rodriguez from a 'photographic lineup' that contained twenty-eight males.   Both of these individuals were indicted, and their indictments were later dismissed.   (***Exhibit 1***).   The defendant believes, and therefore avers, that government agents witnessed the narcotics transactions that lead to the indictments of Cotto and Rios and endorsed or accepted the misidentifications.   These agents may be some or all of the agents who allegedly witnessed the February 7, 2005 narcotics transaction.   Therefore, the identities of the agents who witnessed the various transactions are relevant and may be helpful to the defense of this case.   More specifically, evidence of earlier misidentifications may "cast doubt on the credibility or accuracy of any evidence that the government anticipates offering in its case-in-chief." LR 116.2(A)(3).[1]

Further, the surveillance location of the agents on February 7, 2005 is clearly relevant and necessary for the defendant to determine if the agents were in a position and had the opportunity to identify the person who engaged with Rios that date.   The government has provided a report (FBI 302) that details that certain agents were in vehicles in the vicinity of the narcotics transaction.   (***Exhibit 2***).   The report lacks sufficient specificity to conduct an investigation of the agents claimed line of sight, the lighting, and their opportunity to observe the claimed transaction. The Supreme Court held in *Roviaro v. U.S.,* 353 U.S. 53, 61-62, 77 S.Ct. 623,28 (1957) that a threshold

---

[1] "Exculpatory information includes, but may not be limited to, all information that is material and favorable to the accused because it tends to cast doubt on the credibility or accuracy of any evidence that the government anticipates offering in its case-in-chief."

showing that a view may be impaired should trigger a balancing test wherein the respective interests of the prosecution in nondisclosure and the defendant in marshalling a defense are weighed.  Specifically, "where the disclosure of [information regarding the identification] is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause, the [privilege of nondisclosure] should give way." *Id.* See also, *U.S. v. Tejeda*  974 F.2d 210, 216 (1st Cir. 1992) and *U.S. v. Bailey*, 834 F.2d 218, 222 (1st Cir. 1987).

The reports and information requested that detail the identification of the defendant from a single photograph are necessary for the defendant to assess whether or not the identification process was unduly suggestive and whether a motion to suppress such identification is warranted.  They are therefore discoverable.  See F.R.Cr.P., Rule 12(b)(4)(B).[2]  They may also contain exculpatory information. LR 116.2(A)(2).[3]  See also, *Nassar v. Vinzant*, 519 F.2d 798, 801 (1st Cir.1975), (single photo identifications present so serious a danger of suggestiveness as to require that they be given extremely careful scrutiny), and *United States v. Gomez Pizarro,* 364 F.Supp.2d 56, 67 Dist. Puerto Rico (2005) (suppressing testimony concerning a single-photo identification on the ground of its suggestivity).

---

[2] "At the arraignment or as soon afterward as practicable, the defendant may, in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C), request notice of the government's intent to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16"

[3] "Exculpatory information includes, but may not be limited to, all information that is material and favorable to the accused because it tends to cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief, that might be subject to a motion to suppress or exclude, which would, if allowed, be appealable pursuant to 18 U.S.C. § 3731

For the foregoing reasons, the defendant asks that this motion be allowed.

The Defendant,
Luis Biaggi

By:

John S. Ferrara, Esq.
Dalsey, Ferrara & Albano
73 State Street, Suite 101
Springfield, MA  01103
Tel. No.  (413) 736-6971
Fax No.  (413) 746-9224
BBO No. 542078

## CERTIFICATE OF SERVICE

I, John S. Ferrara, hereby certify that the forgoing document has been filed electronically on this date, May 24, 2006, and upon information and belief will be forwarded to the Office of the United States Attorney.

John S. Ferrara, Esq.



**U.S. Department of Justice**

*Michael J. Sullivan*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (413) 785-0235*
*Facsimile:        (413) 785-0394*

*Federal Building and Courthouse*
*1550 Main Street, Room 310*
*Springfield, Massachusetts 01103*

March 13, 2006

John S. Ferrara, Esq.
73 State Street
Springfield, MA 01103

        Re: Luis Biaggi

Dear Attorney Ferrara:

        In accordance with the Government's discovery obligations I am providing you with the following information concerning misidentifications by Julian Rios, the cooperating witness in the above-captioned case.

        On June 2, 2005, FBI agents displayed a photographic lineup, which consisted of photographs of 28 males, to Rios. The government now believes that Rios mistakenly identified two individuals. First, Rios identified Andres Cotto's photograph as the individual from whom he purchased crack on October 11, 2004. Based upon that identification and other evidence an Indictment was returned against Cotto. The government now believes that Rios misidentified Cotto and has dismissed the Indictment against him.

        Second, Rios identified Tito Rodriguez's photograph as the individual from whom he purchased crack on December 7, 2004. Based upon that identification and other evidence an Indictment was returned against Rodriguez. The government now believes that Rios misidentified Rodriguez and has dismissed the Indictment against him.



EXHIBIT

1

Please call me at (413) 785-0106 if you have questions concerning the above information.

                              Very truly yours,
                              MICHAEL J. SULLIVAN
                              UNITED STATES ATTORNEY

                    By:   _____
                              Paul Hart Smyth
                              Assistant U.S. Attorney

FD-302 (Rev. 10-6-95)

- 1 -

## FEDERAL BUREAU OF INVESTIGATION

Date of transcription    02/09/2005

     On February 7, 2005, an Individual in a position to testify met with the undersigned agents.  The Individual contacted LUIS BIAGGI, AKA KING BIG at 413/539-6509 and allowed the undersigned agents to listen to the conversation.  The Individual asked BIAGGI about the firearm BIAGGI had informed the Individual he could obtain and sell to the Individual.  BIAGGI advised that he was not able to contact his source for guns.  The Individual asked BIAGGI if he could get "bolas", referring to "8" balls of crack cocaine.  BIAGGI advised that he could supply the Individual with "8" balls, and could also supply the Individual with heroin in "bundle" packaging.  BIAGGI acknowledged having sources for both. The Individual informed BIAGGI that he would be interested in getting three "8" balls of crack cocaine the following day.  BIAGGI told the Individual to contact him the following day.

     On February 8, 2005, the Individual met with the undersigned agents.  The Individual provided the following information:

     The Individual contacted LUIS BIAGGI, AKA KING BIG, at 413/539-6509 earlier in the day.  The Individual requested BIAGGI supply him with three "8" balls of crack cocaine at approximately 6:00 pm that same day.  BIAGGI advised that he could supply that amount at a cost of $115.00 per "8" ball.  BIAGGI also asked the Individual if he was in the market for heroin.  The Individual informed BIAGGI that he was only interested in the crack cocaine. BIAGGI directed the Individual to contact him later in the day.

     At approximately 5:50 pm, the Individual made a consensually recorded telephone call to 413/539-6509.  The Individual left a voice mail message for "BIAGGI".  At approximately 5:54 pm, the Individual made a second consensually recorded telephone call to the same number, and asked the female who answered for "BIAGGI".  The female informed the Individual that "BIAGGI" left a message for the Individual that BIAGGI would contact him.

     At approximately 5:58 pm, the Individual received an incoming telephone call from "BIAGGI".  BIAGGI informed the Individual that he was in possession of the three "8" balls of crack cocaine, and asked the Individual to meet him in the "park"

---

Investigation on    2/8/05    at    Springfield, MA

File #  245D-BS-91441-SPRING, 270M-BS-94387    Date dictated  2/9/05

    SFO FRANK OTT
by    SA MARK S. KARANGEKIS/msk

This document contains neither recommendations nor conclusions of the FBI.  It is the property of the FBI and is loaned to you; it and its contents are not to be distributed outside your agency.

EXHIBIT

2

ALL-STATE LEGAL®

FD-302a (Rev. 10-6-95)

245D-BS-91441-SPRING, 270M-BS-94387

Continuation of FD-302 of ___Individual_____, On __2/8/05___, Page ___2___

at the corner of Sargent and Chestnut Streets in the city of
Holyoke.  The Individual agreed to do so.

    At approximately 6:00 pm, a physical surveillance was
initiated in and around the vicinity of Sargent and Chestnut
Streets in Holyoke by the following officers:  SFO Brian Duke, SFO
Steve Marangoudakis, SFO Fred Geiger, and SFO Thomas Fitzgerald.
Surveillance officers observed several parties standing on the
corner of Sargent and Chestnut Street near the "park".

    At approximately 6:00 pm, the Individual's person and
vehicle were searched for money and contraband with negative
results.  The Individual was provided with a body recorder,
transmitter, and $350.00 in official agency funds.  The undersigned
agents surveilled the Individual to Sargent and Chestnut Streets in
the city of Holyoke.  The Individual arrived at approximately 6:31
pm.  The Individual was overheard having a conversation with a
party believed to be BIAGGI (voice).  BIAGGI, who was wearing a
black jacket, dark pants, and a black baseball cap worn sideways,
entered the Individual's vehicle.  The Individual's vehicle was
surveilled around the block.  The Individual's vehicle came to a
stop on Sargent Street north of Chestnut Street, facing northbound.
BIAGGI exited the Individual's vehicle.  SFO GEIGER and SFO Duke
drove by the Individual's vehicle and was able to positively
identify the party wearing the black jacket and black hat sideways
as LUIS BIAGGI, AKA KING BIG.

    The Individual remained at that location in his vehicle
for several minutes.  BIAGGI remained outside of the Individual's
vehicle.  The Individual contacted the undersigned agents and
confirmed that the party who was currently outside of his vehicle,
and who entered his vehicle earlier, was LUIS BIAGGI.  At that
time, SFO Marangoudakis and SFO Fitzgerald passed the Individual's
vehicle and identified the party outside of the Individual's
vehicle as LUIS BIAGGI.  Several minutes later, a dark sedan
arrived on Chestnut Street at the corner of Sargent Street and
parked facing eastbound.  BIAGGI crossed the street toward the
vehicle and went out of sight from the surveillance officers.  The
Individual was observed turning around and parking on Sargent
Street in a southerly direction facing the corner of Chestnut
Street. Moments later, BIAGGI returned from the area of the dark
sedan.  The dark sedan departed the area, and BIAGGI entered the
Individual's vehicle.  The Individual was overheard having a
conversation with BIAGGI which was consistent with a drug
trafficking transaction.  BIAGGI exited the Individual's vehicle

FD-302a (Rev. 10-6-95)

245D-BS-91441-SPRING, 270M-BS-94387

Continuation of FD-302 of _____Individual_____, On __2/8/05__, Page __3__

and walked toward the corner of Sargent and Chestnut Streets. At that time, the undersigned agents, who were at the corner of Sargent and Chestnut Streets, observed the party who exited the Individual's vehicle, and identified that party as LUIS BIAGGI.

The Individual was surveilled to a pre-determined meeting location by the undersigned agents, arriving at approximately 7:09 pm. The Individual provided the undersigned agent with the above referenced body recorder, transmitter, and two clear plastic bags, each of which contained a substance which was consistent in color, texture, and odor with that of crack cocaine. The Individual's person and vehicle were searched for money and contraband with negative results. The Individual provided the following information:

The Individual arrived at the corner of Sargent and Chestnut Streets, and observed BIAGGI standing on the corner with FNU LNU, AKA KING MENOR, a lower level member of the Holyoke Chapter of the Latin Kings, and an associate of BIAGGI. The Individual remained in his vehicle, and was approached by both BIAGGI and MENOR. MENOR left BIAGGI at the Individual's vehicle. BIAGGI was wearing a black jacket, dark pants, and a dark baseball cap worn sideways. BIAGGI's hair was "puffed out the side". BIAGGI asked the Individual if he was followed by the police. BIAGGI then entered the front passenger seat of the Individual's vehicle. BIAGGI asked for the Individual's cellular telephone, and attempted to contact an unidentified party who was holding the crack cocaine. BIAGGI did not get through, and gave the phone back to the Individual, who had just completed a drive around the block.

BIAGGI got out of the vehicle, and waited on the sidewalk. BIAGGI returned to the Individual's vehicle, and through the driver's window, took the $350.00 in official agency funds from the Individual. A maroon vehicle stopped at the corner of Chestnut and Sargent Streets on Chestnut Street. BIAGGI went across the street toward that corner. The Individual turned his vehicle around to face Chestnut Street. An unidentified person got out of the maroon vehicle, and proceeded toward the doorway of the building on the northwest corner of Chestnut and Sargent Streets, the same building it appeared to the Individual that BIAGGI entered. Moments later, BIAGGI returned to the Individual's vehicle, entered the passenger seat, and provided the Individual with the above referenced suspected crack cocaine. BIAGGI got out

FD-302a (Rev. 10-6-95)

245D-BS-91441-SPRING, 270M-BS-94387

Continuation of FD-302 of ___Individual_____, On _2/8/05___, Page __4__

of the Individual's vehicle, and walked toward the corner of
Sargent and Chestnut Streets.